**Janis BABER, Mary Lou Mooney and Marilyn Cadenhead, Appellants,**

v.

**PIONEER CONCRETE OF TEXAS, INC., Appellee.**

No. 2–94–224–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 17, 1995.

Rehearing Overruled Oct. 5, 1995.

Don Driver, Law Offices of Don Driver, Fort Worth, for appellants.

Charles R. Haworth, Bruce H. Rogers, Scott, Douglass, Luton & McConnico, L.L.P., Dallas, for appellee.

Before RICHARDS, J., and SAM BASS and JOE SPURLOCK, II, JJ. (Retired) (Sitting by Assignment).

## OPINION

SAM BASS, Justice (Retired) (Sitting by Assignment).

Appellants Janis Baber, Mary Lou Mooney and Marilyn Cadenhead sued appellee Pioneer Concrete of Texas, Inc. on theories of breach of contract and fraud allegedly committed by appellee when it canceled leases to mine sand & gravel on appellants' property. Appellee responded by general denial and affirmative defenses of failure of consideration, fraud, unclean hands, limitations, failure to mitigate damages, prior breach, excuse, mutual mistake, and impracticability. Appellee also counterclaimed for breach of warranty, common law fraud, and statutory fraud in a real estate transaction under section 27.01 of the Texas Business and Commerce Code. Trial was to the court. The trial court filed findings of fact and conclusions of law. The trial court entered judgment: that appellants take nothing; and that appellee recover attorney's fees for $95,-000.00 under its counterclaims. Appellants' appeal alleges two points of error in the trial court's conclusions of law, items no. 6, 23, 24, 25, and 33, and findings of fact numbers 56.

Appellants' first point of error contends the evidence is legally and factually insufficient to support the trial court's conclusions of law numbers 6, 23, 24, and 25 (which determined that Baber was guilty of fraud) because there was legally and factually insufficient evidence of a material misrepresentation and of any justified reliance by appellee.

The court's conclusions of law, set forth in this appeal, are as follows:

6. As a matter of law, [appellants'] representations and warranties of Section 8(b), being untrue inducements on March 21, 1986, excused the [appellee's] performance of the leases.

23. Upon the evidence admitted at trial, there was no proof of the [appellants'] knowledge of the falsity of the representations and warranties made by them in Section 8(b) of their leases, but, as matter of law, an unqualified statement that a fact exists, made for the purpose of inducing another to act upon it, implies that the one who

makes it knows it to be true and speaks from such knowledge; and if the facts represented do not exist, the law imputes a fraudulent purpose to the person making such representation.

24. Upon the evidence admitted at trial, fraudulent intent is imputed to the [appellants] as a matter of law, and the warranties and representations by each [appellant] in section 8(b) of their leases constituted common law fraud and fraud as defined by section 27.01, Texas Business & Commerce Code.

25. The [appellee] Defendant relied on [appellants'] said fraud, but the court has already concluded that the [appellee] has no liability for payment of either minimum royalties or production royalties under the leases, and the evidence admitted at trial did not prove other monetary detriment or injury to the [appellee].

Paragraph 8(b) of the leases is as follows:

8. *Lessor's Representations and Warranties.* To induce Lessee to enter into this lease and to purchase all the sand and gravel in, on and not to exceed a depth of fifty (50) feet under the surface of the Leased Premises, Lessor hereby represents and warrants unto Lessee that:

. . . .

(b) There are no proceedings, administrative hearings, governmental requirements, material claims, or other matters pending or threatened against Lessor or against the Leased Premises, which could have a material adverse effect upon (i) the ownership of the Leased Premises of any part thereof or interest therein, (ii) the mining of the Leased Premises for sand and gravel, or (iii) the value of the Leased Premises.

The above lease was signed by Cadenhead on October 29, 1985; by appellant Baber on November 15, 1985; by Mooney on December 9, 1985, and the last lease was signed in February 1986 by Pratt. Appellee signed the leases on March 21, 1986, which was subsequent to the petitions for an election to create the City of Rosser.

A short time before February 18, 1986, citizens obtained signatures on a petition for an election to incorporate the City of Rosser. The testimony of appellant Baber shows that the residents of Rosser were seeking to incorporate as a municipality on February 18, 1986, and that one of the reasons for incorporation was concern about the mining of sand and gravel on the leases between appellant Baber and her family and the appellee. A resolution was passed in February 1990 which prohibited the mining of sand and gravel within the corporate limits and the extraterritorial jurisdiction of Rosser unless a special use permit requiring the applicant to post a guaranty bond was issued. On February 15, 1993 an ordinance was passed: prohibiting the excavation of sand or gravel or other type of rock or mineral without a permit; approving an environmental study conducted by a government agency; and requiring the posting of a $1,000,000.00 performance bond for each acre or part of an acre within the area to be mined.

Section 27.01 of the Texas Business and Commerce Code provides as follows:

### § 27.01 Fraud in Real Estate and Stock Transactions

(a) Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a

(1) false representation of a past or existing material fact, when the false representation is

(A) made to a person for the purpose of inducing that person to enter into a contract; and

(B) relied on by that person in entering into that contract; or

(2) false promise to do an act, when the false promise is

(A) material;

(B) made with the intention of not fulfilling it;

(C) made to a person for the purpose of inducing that person to enter into a contract; and

(D) relied on by that person in entering into that contract.

(b) A person who makes a false representation or false promise commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for actual damages.

(c) A person who makes a false representation or false promise with actual awareness of the falsity thereof commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for exemplary damages. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

(d) A person who (1) has actual awareness of the falsity of a representation or promise made by another person and (2) fails to disclose the falsity of the representation or promise to the person defrauded, and (3) benefits from the false representation or promise commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for exemplary damages. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

(e) Any person who violates the provisions of this section shall be liable to the person defrauded for reasonable and necessary attorney's fees, expert witness fees, costs for copies of depositions, and costs of court.

TEX.BUS. & COM.CODE ANN. § 27.01 (Vernon 1987).

■ A court reviewing the legal sufficiency of evidence is to consider only the evidence and inferences that support the challenged finding and must disregard all contrary evidence and inferences. *Davis v. City of San Antonio,* 752 S.W.2d 518 (Tex. 1988). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (Tex.1951). When reviewing an insufficiency-of-the-evidence challenge, the court of appeals must examine all the evidence. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804 (Tex. 1986). The court of appeals should set aside the finding of the lower court only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175 (Tex.1986).

Numerous witnesses testified that the movement to incorporate Rosser was driven, at least in part, by a desire to keep appellee from mining sand and gravel on the leased premises because of the fear of water loss or contamination. Appellant Mooney testified that as of her knowledge in May of 1986, one of the reasons for the incorporation was to prohibit the mining of sand and gravel. Appellant Cadenhead testified that she became aware that the purported incorporation of Rosser was for the purpose of prohibiting the mining of sand and gravel. Three other witnesses, Pratt, Alford, and Culver, all testified that the attempt to incorporate Rosser was, in effect, to prohibit the mining of sand and gravel, and that this feeling was substantially unanimous by the inhabitants of Rosser. Culver said that because of this risk involved, appellee would not want to lease the property because it would jeopardize the mining operation for sand and gravel. On June 27, 1986, appellee declared the leases null and void, stating that Baber, Cadenhead, and Mooney had breached section 8(b) of the lease by failing to live up to the warranty that there were no pending proceedings which could have a material adverse effect upon the mining of the leased properties, or upon the value of the leased premises. On March 9, 1990, Baber, Mooney, and Cadenhead filed suit against the appellee alleging breach of contract.

Conclusions of law numbers 6, 23, 24, and 25, previously set forth above are supported by the findings of fact and the evidence within the record, as shown by the testimony set forth above.

■ An unqualified statement that a fact exists, made for the purpose of inducing another to act upon it, implies that the one who makes it knows it to be true and speaks from such knowledge. If the facts represented do not exist, and the person states of his own knowledge that they do, and induces another to act upon his statement, the law imputes to him a fraudulent purpose. *United States Gypsum Co. v. Shields,* 106 S.W. 724 (Tex.

Civ.App.), *aff'd*, 101 Tex. 473, 108 S.W. 1165 (1908).

There is no evidence that the appellee was on notice that any of the property was located within the City of Rosser at the time the negotiations for the leases were going on, or that the property was located within the City of Rosser by virtue of any instrument delivered to the appellee. However, there is evidence that the appellants received knowledge that the leased premises would be within the corporate limits of the city if the 1986 incorporation were valid; and, that the appellants received knowledge that the city would attempt to keep the mining of sand and gravel from occurring within the city. The evidence at trial supports the trial court's conclusions of law numbers 6, 23, 24, and 25.

Appellants' first point of error is overruled.

Appellants' second point of error contends that the attorney fees awarded were excessive, were not segregated, and were not properly proven.

Attorney Haworth testified concerning attorney fees. His testimony is substantially that he: was familiar with the work performed in this proceeding which included work on the case from 1988 through June 1994; prepared the pleadings; took depositions; did the discovery work; did witness interviews; prepared briefs; did the briefing; prepared the case for trial; and tried the case before the court. In his opinion a reasonable fee would be in the neighborhood of $95,000.00. There was no cross examination of attorney Haworth, and there was no other testimony offered by any other person or persons concerning attorney fees.

Appellants claim that "it is incumbent upon the party asserting more than one cause of action to segregate them from those for which attorney fees can be recovered." *Kosberg v. Brown*, 601 S.W.2d 414, 418 (Tex.Civ. App.—Houston [14th Dist.] 1980, no writ); *American Nat'l Bank v. First Wisconsin Mortgage Trust*, 577 S.W.2d 312 (Tex.Civ. App.—Beaumont 1979, writ ref'd n.r.e.).

Appellee claims that it is allowed to recover attorney fees under subsection (e) of section 27.01 of the Texas Business and Commerce Code.

A court abuses its discretion only if the action taken is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Loftin v. Martin*, 776 S.W.2d 145, 146 (Tex.1989). The amount of a reasonable attorney fee award is a fact issue that must be supported by competent evidence. *Great Am. Reserve Ins. Co. v. Britton*, 406 S.W.2d 901, 907 (Tex.1966). There is no locality rule limiting attorney fees. *Brazos County Water Control & Improvement Dist. v. Salvaggio*, 698 S.W.2d 173, 178 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). "[I]n a nonjury trial, if the trial court *awards* a fee based upon evidence of services or time spent that should have been segregated but was not, the opposing party must object to the trial court's error by postjudgment motion in the trial court in order to urge that error on appeal." *Southern Concrete Co. v. Metrotec Fin. Inc.*, 775 S.W.2d 446, 450 (Tex.App.—Dallas 1989, no writ). When the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are intertwined to the point of being inseparable, the party suing for attorney fees may recover the entire amount covering all claims. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex.1991). The appellants have not shown error in the allowance of the fees. *Pockrus v. Connelly*, 521 S.W.2d 115, 117 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.).

Appellants' second point of error is overruled.

The judgment of the trial court is affirmed.