NEURO–DEVELOPMENTAL ASSOCIATES OF HOUSTON, Appellant,

v.

CORPORATE PINES REALTY CORP., Appellee.

No. 01–94–01130–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 1995.

Rehearing Overruled Oct. 19, 1995.

Gordon A. Holloway, Kyle M. Rowley, Houston, for appellant.

Sheila M. Humphrey, Houston, for appellee.

Before HEDGES, HUTSON–DUNN and MIRABAL, JJ.

## OPINION

HEDGES, Justice.

Neuro–Developmental Associates of Houston (NDA) appeals a judgment in a suit against Corporate Pines Realty Corporation (Corporate Pines) and its owner, Yigal Bosch, for breach of an implied warranty of suitability of commercial premises, breach of contract, DTPA violations, and intentional infliction of emotional distress. In a jury trial, Corporate Pines pled estoppel and counterclaimed for outstanding lease payments. The judgment denied any award to NDA and awarded Corporate Pines damages in the amount of $13,699.89. In nine points of error, NDA contends that the trial court erred in failing to submit proper jury questions and that the jury's findings were against the great weight and preponderance of the evidence. We reverse and remand.

### Facts

NDA's principals are physical and speech therapists who treat handicapped children. On May 5, 1988, three of the principals signed a lease with the original landlord, Massachusetts Mutual Life Insurance Company, covering space at 6600 Harwin in Houston (the "premises"). NDA leased the premises to establish a clinic in which to work with handicapped children and infants. Because of their various physical handicaps, many of NDA's patients have problems with body temperature regulation; therefore, the temperature of the premises was an important factor in the treatment of the patients.

In April, 1991, Corporate Pines purchased 6600 Harwin and became NDA's landlord. In the summer of 1992, the heating and air conditioning systems of the premises began malfunctioning. The building was continuously too hot in summer and too cold in winter. The patients' parents described the premises as generally unsuitable, "miserable," "unbearable," and "suffocating" from the summer of 1992 through 1993.

During this time, the heating unit would often blow heat when the air conditioning should have been on, making the temperature in the treatment areas as high as 88 degrees. At times, Corporate Pines even furnished NDA with space heaters to warm the premises. When NDA attempted to have an independent contractor work on the heating and air conditioning, Corporate Pine's property manager chased him off the property.

NDA and the patients' parents also complained to Corporate Pines about the temperature problems. Between January 11, 1993 and February 25, 1993, Corporate Pines logged 80 different instances of heating, air conditioning, and other tenant problems in NDA's premises. Corporate Pines sent a porter, Charles Rollins, who was unable to diagnose or repair the heating and air conditioning problems. Property manager Ted Brakatselos testified that the heating problems made the premises unacceptable and acknowledged that problems existed for a month or longer that should have been fixed within two weeks.

NDA moved out of the premises December 4, 1993. It paid rent through November, 1993 totaling $40,121.10 and incurred moving expenses of $21,395.09.

### Jury Charge Error

In points of error one through six, NDA attacks elements of the jury charge.

### Standard of Review

■ A trial court has great discretion in submitting jury questions. *Mobil Chemical v. Bell*, 517 S.W.2d 245, 256 (Tex.1974). This discretion is subject only to the requirement that the submitted questions must fairly submit the disputed issues for the jury's determination. *Baker Marine Corp. v. Moseley*, 645 S.W.2d 486, 489 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); TEX.R.CIV.P. 277. The trial court may not properly refuse to submit a question merely because the evidence is factually insufficient to support an affirmative finding. *Garza v. Alviar*, 395 S.W.2d 821, 824 (Tex.1965).

■ To determine whether an alleged error in the jury charge is reversible, the appellate court must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex.1986). If there is evidence to support the submission of the jury questions, the trial court's refusal to submit such questions is reversible error. *Southwestern Bell Tel. Co. v. Thomas*, 554 S.W.2d 672, 674 (Tex.1977).

### Implied Warranty of Suitability

■ In point of error four, NDA contends that "[t]he trial court error in entering judgment in favor of Corporate Pines Realty for past rent because the court failed to submit the defense of a breach of implied warranty of suitability for commercial purposes." The gist of this argument is that to avoid damages for past due rent, all NDA had to establish was Corporate Pine's breach of the implied warranty; NDA was not required to establish that the breach caused it to suffer damages. Therefore, jury question 2, which combines the concepts of breach and producing cause and does not allow a jury finding of breach alone, is an improper defensive issue. NDA insists that it was entitled to a jury question that isolated the issue of breach independent of damages.

■ We agree with NDA that a finding of breach of implied warranty of suitability alone, without a finding of producing cause of damages, is a complete defense to liability for past due rent. In *Davidow v. Inwood North Professional Group*, 747 S.W.2d 373 (Tex. 1988), the court first recognized the existence of an implied warranty of suitability by a landlord in a commercial lease. *Id.* at 377. As a corollary, the court explained that "[t]he tenant's obligation to pay rent and the landlord's implied warranty of suitability are therefore mutually dependent." *Id.* It is illogical that the tenant would bear the additional burden of proving damages to avoid liability.

The trial court erred in failing to submit a question that would have isolated the issue of breach of implied warranty, independent of damages.

We sustain point of error four.

The discussion of the remaining points of error does not meet the criteria for publication, TEX.R.APP.P. 90, and is thus ordered not published.

We reverse and remand for a new trial.